1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JOHN HOSKINGS,                              1:05-CV-01430 OWW SMS HC

                Petitioner,

                              FINDINGS AND RECOMMENDATION
    v.                         REGARDING PETITION FOR WRIT OF
                              HABEAS CORPUS

PAT L. VASQUEZ,

                Respondent.
_____/

      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL BACKGROUND

      Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction on April 27, 1984, by court trial of second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. The allegation that Petitioner had personally used a firearm during commission of the offense was found to be true. Id. In addition, Petitioner was found guilty of escaping from a county jail. See Answer, Exhibit 3 at 19-20. On February 10, 1986, he was sentenced to serve an indeterminate term of 17 years to life

1   with the possibility of parole. Id. His minimum eligible parole date was May 12, 1992. See

2   Answer, Exhibit 3 at 1.

3       On December 23, 2003, a subsequent parole suitability hearing was held before the

4   California Board of Prison Terms[1] (hereinafter "Board"). Id. Petitioner participated in the hearing

5   and was represented by counsel. Id. At the conclusion of the hearing, the Board determined

6   Petitioner would not pose an unreasonable risk of danger to the public if released and was

7   suitable for parole. Id. at 48.

8       On May 18, 2004, after considering the parole decision of the Board, the Governor

9   concluded Petitioner continued to pose an unreasonable risk of danger to the public, reversed the

10   Board's decision, and denied parole. See Answer, Exhibit 2. The decision was sent by facsimile

11   to Petitioner on May 21, 2004. Id.

12       Petitioner then sought relief in the state courts. On August 23, 2004, he filed a petition for

13   writ of habeas corpus in the Kern County Superior Court. See Answer, Exhibit 5. The superior

14   court denied the petition on February 15, 2005, in a reasoned decision. See Answer, Exhibit 6.

15   He then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, on

16   May 26, 2005. See Answer, Exhibit 7. The petition was summarily denied on June 16, 2005. See

17   Answer, Exhibit 8. On June 22, 2005, Petitioner filed a petition for review in the California

18   Supreme Court. See Answer, Exhibit 9. The petition was denied without comment on August 31,

19   2005. See Answer, Exhibit 10.

20       Petitioner filed a petition for writ of habeas corpus in this Court on November 14, 2005,

21   challenging the Governor's reversal of the Board's grant of parole. On February 21, 2006,

22   Respondent filed a motion to dismiss the petition for failure to state a cognizable federal claim

23   for relief. On May 25, 2006, the undersigned issued a Findings and Recommendation which

24   recommended Respondent's motion to dismiss be granted and the petition be dismissed. The

25   Findings and Recommendation was adopted in full on June 27, 2006, and the petition was

26

27       [1]On July 1, 2005, California created the Board of Parole Hearings to replace the Board of Prison Terms.
    Cal.Penal Code § 5075(a).

28

dismissed. Petitioner then sought an appeal with the Ninth Circuit Court of Appeals. On February 26, 2007, the parties' stipulated motion for remand was granted in light of the intervening precedent of Sass v. California Board of Prison Terms, 461 F.3d 1123 (9th Cir.2006), and the petition was remanded for further proceedings consistent with Sass. On November 26, 2007, Respondent filed an answer to the petition. Petitioner filed a traverse on January 25, 2008.

## FACTUAL BACKGROUND[2]

On May 8, 1981, a 1971 Chevrolet pickup was discovered by the Fish and Game Department, hidden in some brush off the Keysville Road near Kernville, California. The decomposed body of a human adult male was discovered inside the camper shell of the truck. It was wrapped in a piece of old carpet and covered with debris. Kern County Sheriffs determined that the pickup truck belonged to 39-year-old George Ramond Quellette. The County Coroner was able to determine the cause of death had resulted from several .22-caliber gunshot wounds to the head, upper torso, and upper extremities.

A subsequent investigation by the Kern County Sheriff's Department indicated Quellette owned property on Piute Mountain and occasionally hired two teenagers to work with him on the property. One of the teenagers was 19-year-old George Denton. Denton stated on April 23, 1981, he and Petitioner accompanied Quellette to the Piute Mountain property to work off $60.00 Denton owed Quellette. Denton stated that during the day he and Petitioner went to the house adjacent to Quellette's property where they visited with Steve Krull and smoked some marijuana. Later, they did some target practicing with Krull's .22-caliber rifle; shooting at trees, rocks and pine cones. Denton related that he, Petitioner and Krull began talking about killing Quellette. Petitioner began discussing that he did not want to work for Quellette, that if he killed him, that he would not have to work for him, plus he could take his pickup.

The three returned to Quellette's property with Petitioner carrying the rifle. Shortly thereafter, Denton stated he heard a shot as he was taking a drink of water from a faucet. He looked up to see Quellette fall and Petitioner fire several more rounds into his body. At that time,

---

[2]The factual summary is derived from a 1998 parole suitability hearing, since the 2003 hearing did not set forth the facts. See Answer, Exhibit 5(b).

1  Denton said he became frightened and ran to Krull's house. When they went back to Quellette's

2  property, Krull stated he did not think Petitioner was serious when he talked about killing

3  Quellette. Denton said that all three subjects, himself, Petitioner, and Krull, discussed the

4  situation. They decided to place the victim in the camper shell and Denton and Petitioner drove

5  the vehicle down the mountain and attempted to hide it near the Keysville area.

6                                              **DISCUSSION**

7  I.        Standard of Review

8          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

9  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

10  enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

11  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

12  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

13  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

14  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

15  provisions.

16          Petitioner is in custody of the California Department of Corrections pursuant to a state

17  court judgment. Even though Petitioner is not challenging the underlying state court conviction,

18  28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the

19  threshold requirement of being in custody pursuant to a state court judgment. Sass v. California

20  Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370

21  F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

22  state prisoner in custody pursuant to a state court judgment, even when the petition is not

23  challenging his underlying state court conviction.'").

24          The instant petition is reviewed under the provisions of the Antiterrorism and Effective

25  Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S. 63,

26  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

27  adjudication of the claim "resulted in a decision that was contrary to, or involved an

28  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States" or "resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

§ 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

 As a threshold matter, this Court must "first decide what constitutes 'clearly established

Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

*quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

principles set forth by the Supreme Court at the time the state court renders its decision." Id

 Finally, this Court must consider whether the state court's decision was "contrary to, or

involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the] Court has on a

set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

state court identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

413.

 "[A] federal court may not issue the writ simply because the court concludes in its

independent judgment that the relevant state court decision applied clearly established federal

law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

A federal habeas court making the "unreasonable application" inquiry should ask whether the

state court's application of clearly established federal law was "objectively unreasonable." Id. at

409.

 Petitioner has the burden of establishing that the decision of the state court is contrary to

or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

1  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

2  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

3  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

4  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

5  AEDPA requires that we give considerable deference to state court decisions. The state

6  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

7  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,

8  537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

9  As noted above, Petitioner's claims were presented in a petition for writ of habeas corpus

10 to the Kern County Superior Court. See Answer, Exhibit 5. The superior court denied the claims

11 in a reasoned opinion. See Answer, Exhibit 6. Petitioner then presented his claims to the

12 appellate court and to the California Supreme Court. Both petitions were summarily denied. See

13 Answer, Exhibits 7-10. The California Supreme Court, by its "silent order" denying review of the

14 superior court's decision, is presumed to have denied the claims presented for the same reasons

15 stated in the opinion of the superior court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

16 II.    Review of Petition

17 A parole release determination is not subject to all the due process protections of an

18 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see

19 also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)

20 (explaining that due process is flexible and calls for procedural protections that particular

21 situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,

22 the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,

23 even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of

24 Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is

25 guaranteed the following process: 1) the inmate must receive advance written notice of a hearing,

26 Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"

27 Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why

28 "he falls short of qualifying for parole." Id. The record is clear and Petitioner acknowledges that

1  these guarantees were provided him at the hearing.

2       "In <u>Superintendent, Mass. Correc. Inst. v. Hill</u>, the Supreme Court held that 'revocation

3  of *good time* does not comport with 'the minimum requirements of procedural due process,'

4  unless the findings of the prison disciplinary board are supported by *some evidence* in the

5  record.'  472 U.S. 445, 454 (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)."

6  <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added).

7  The Ninth Circuit has held that this same standard also extends to parole determinations. <u>Irons v.</u>

8  <u>Carey</u>, 505 F.3d 846, 851 (9th Cir.2007), *quoting* <u>Hill</u>, 472 U.S. at 457 ("We have held that 'the

9  Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due

10  process with respect to this interest if the board's decision is not supported by 'some evidence in

11  the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability

12  determination was supported by 'some evidence' in a habeas case, our analysis is framed by the

13  statutes and regulations governing parole suitability determinations in the relevant state." <u>Irons</u>,

14  505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing

15  the record and determining whether the "some evidence" standard is met, the Court need not

16  examine the entire record, independently assess the credibility of witnesses, or re-weigh the

17  evidence.  <u>Sass</u>, 461 F.3d at 1128.

18       California law provides that after an inmate has served the minimum term of confinement

19  required by statute, the Board "shall set a release date unless it determines that the gravity of the

20  current convicted offense or offenses, or the timing and gravity of current or past convicted

21  offense or offenses, is such that consideration of the public safety requires a more lengthy period

22  of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel

23  the prisoner will pose an unreasonable risk of danger to society if released from prison," the

24  prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The

25  Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it

26  has set forth in the California Code of Regulations.

27       To determine whether 'some evidence' supports the state court decision, the test is not

28  whether some evidence supports the reasons cited for denying parole, "but whether some

1  evidence indicates a parolee's release unreasonably endangers public safety." In re Lee, 143

2  Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

3      Under California law, the Governor, in considering whether to reverse a grant of parole

4  by the Board, must consider the same factors the Board is required to consider. See Cal. Const.

5  art. 5, § 8(b); In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174, 210

6  (Cal.2002). Accordingly, the Governor's decision to reverse a parole grant is reviewed under the

7  same procedural due process principles used to review challenges to the Board's denial of parole.

8      In denying parole in this case, the Governor determined Petitioner posed an unreasonable

9  risk of danger to the public if released based on the following factors: 1) Petitioner's previous

10  criminal behavior which continued in prison; 2) His lack of participation in substance abuse

11  therapy programs; 3) His lack of employment plans; and 4) The nature and gravity of the

12  commitment offense. See Answer, Exhibit 2. A review of the Governor's decision reveals that

13  the state court decision approving the Governor's determination of unsuitability was not

14  unreasonable.

15      The first factor discussed by the Governor was Petitioner's previous criminal behavior. It

16  was noted that Petitioner had committed burglary one year prior to the instant offense and then

17  auto theft a few months later. In addition, Petitioner was on probation at the time he murdered

18  the victim. The Governor noted that after Petitioner was committed to state prison for the

19  murder, he continued his criminal behavior for a period of 14 years. He sustained six serious

20  rules violations for which he was disciplined, including one for threatening to kill another

21  inmate. He also committed multiple incidents of misconduct for which he was counseled.

22  Despite being disciplinary free for the past nine years, the Governor determined that his gains

23  were recent and he had not demonstrated that he had in fact enhanced his ability to function

24  within the law upon release.

25      Next, the Governor noted that Petitioner admitted he smoked marijuana on the day of the

26  murder and he continued to use drugs in prison until 1990. In 2000, a mental health evaluation

27  concluded that drug use was a causative factor of the murder. The Governor further noted that

28  prison psychologists had agreed that substance-abuse therapy was critical for Petitioner.

However, Petitioner had failed to avail himself of any substance abuse programs, with the exception of one year in Alcoholics Anonymous in 1993-1994, a few months in Narcotics Anonymous in 2000, and the completion of a book report in 2002 on substance abuse. The Governor noted that Petitioner did not think he needed any help and had not arranged any type of substance-abuse therapy for himself upon parole.

The Governor then took issue with Petitioner's lack of any employment plans. The Governor stated that Petitioner did not have job offers, prospects, or specific employment plans, and he could not articulate at the hearing exactly how he would find employment. The Governor noted that Petitioner did not possess a consistent work history outside of prison and lacked sufficient insight about the challenges he will face in free society.  The Governor pointed to two prior mental health evaluations from 2002 and 2003 which recommended Petitioner's parole be contingent upon, among other things, "securing two letters from potential employers stating their willingness to hire [him]." Id.

Finally, the Governor found that the underlying crime itself was especially heinous and atrocious. The Governor noted that Petitioner committed a calculated, cold-blooded, and merciless killing without provocation or warning and of a victim he hardly knew. In addition, his motive was inexplicable. The Governor found that Petitioner's conduct went beyond the minimum necessary to sustain a conviction for second degree murder. The Governor determined that the circumstances of the offense were of such a heinous and atrocious nature that Petitioner would pose an unreasonable risk of danger to society if released.

In sum, the Governor determined that Petitioner's prior criminal history, his criminal history during the first 14 years of incarceration, his lack of adequate substance abuse programming, his lack of employment plans, and the heinous circumstances of the offense led to his conclusion that Petitioner would pose a risk of danger to the public if released at the present time. The state court considered the reasons given by the Governor and determined that there was at least some evidence in the record to support the decision. Upon review of the record, this Court cannot conclude that the state court rejection of Petitioner's claim - that the Governor's determination was not supported by some evidence - was unreasonable.

1        Petitioner's claim that the Governor improperly relied on unchanging factors is without

2  merit. While it is true that in <u>Biggs v. Terhune</u>, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth

3  Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance

4  of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals

5  espoused by the prison system and could result in a due process violation," this is not the

6  situation here. As discussed above, the Governor did not merely consider the underlying offense.

7  The Governor also considered Petitioner's prior criminal history, his lack of adequate

8  participation in self-help programming, and his lack of employment plans.

9  **RECOMMENDATION**

10        Based on the foregoing, it is HEREBY RECOMMENDED that:

11      1.      The Petition for Writ of Habeas Corpus be DENIED; and

12      2.      The Clerk of Court be DIRECTED to enter judgment for Respondent.

13        This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger,

14  United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)

15  and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern

16  District of California.  Within thirty (30) days after being served with a copy of this Findings and

17  Recommendation, any party may file written objections with the Court and serve a copy on all

18  parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and

19  Recommendation."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days

20  (plus three days if served by mail) after service of the Objections.  The Finding and

21  Recommendation will then be submitted to the District Court for review of the Magistrate

22  Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

23  objections within the specified time may waive the right to appeal the Order of the District Court.

24  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

25  IT IS SO ORDERED.

26  **Dated:**    **October 17, 2008**                **/s/ Sandra M. Snyder**
                                   UNITED STATES MAGISTRATE JUDGE

27

28